Aksana M. Coone, Esq. (SBN 190125)
LAW OFFICES OF AKSANA M. COONE
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone: (310) 556-9650
Facsimile: (310) 954-9008
Email: aksana@coonelaw.com

Attorneys for Plaintiff,
GAIL PARSONS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAIL PARSONS<br><br>Plaintiff,<br><br>Vs.<br><br>CRYSTAL CRUISES, LLC,<br><br>Defendant. | Case No.: 2:20-cv-7382<br><br>**COMPLAINT FOR DAMAGES FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL**<br><br><br>Filed: August 14, 2020<br>Judge: Hon.<br>Magistrate: Hon. |

COMES NOW the plaintiff, GAIL PARSONS (hereinafter "Plaintiff") and alleges as follows:

**JURISDICTION AND VENUE**

1.  This is an action for damages for personal injuries suffered while Plaintiff was a fare paying passenger aboard a cruise ship operating on the high seas in navigable waters seeking damages in excess of $75,000, exclusive of interest, costs, and attorney's fees between citizens of different States and foreign countries. Federal subject matter jurisdiction arises under and is by virtue of diversity citizenship pursuant to 28 U.S.C. § 1332. In the alternative, if diversity

jurisdiction does not apply, then this matter arises under maritime law such that the Court has admiralty jurisdiction under 28 U.S.C. § 1333 and the general maritime law of the United States.

2. Venue is proper in this District pursuant to 28 U.S.C § 1391(b) because Defendant CRYSTAL CRUISES, LLC is a California Limited Liability Company operating cruise ships out of Los Angeles and is subject to the Court's personal jurisdiction with respect to this action.

## THE PARTIES

1. Plaintiff is a citizen of the State of California.

2. On information and belief, Plaintiff alleges Defendant CRYSTAL CRUISES, LLC, (hereinafter "Defendant") is diverse to her by virtue of its owners and members being citizens of States other than California, including Genting Hong Kong Limited, a citizen of Hong Kong. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that for purposes of determining diversity jurisdiction, an LLC is deemed a citizen of every state of which its owners/members are citizens). If necessary, following Defendant's response to the Complaint, Plaintiff will conduct jurisdictional discovery and seek to amend the allegations of this paragraph. *See Carolina Cas. Ins. Co. v. Team Equip., Inc*., 741 F.3d 1082, 1087-88 (9th Cir. 2014) (Jurisdictional discovery and leave to amend appropriate when citizenship information is within Defendant's control).

3. At all times herein material, Defendant is a common carrier engaged in the business of marketing, selling and operating a cruise line and providing cruise vacations to passengers for compensation on ships that sail out of various foreign and U.S. ports, including Los Angeles, California.

/ / /

/ / /

/ / /

**FIRST CAUSE OF ACTION AGAINST DEFENDANT**

**(Negligence-General Maritime Law)**

4. On or about August 16, 2019, and at all times herein material, Defendant owned, managed, operated, maintained, supervised, inspected and/or controlled the ocean-going passenger vessel known as *Crystal Esprit* (hereinafter "Vessel"), which was operating on navigable waters and the high seas.

5. On or about August 16, 2019, Plaintiff was a fare paying passenger on the Vessel.

6. Prior to the departure date, Plaintiff purchased a ticket for a 7-day "Secrets of the Cyclades" cruise aboard the Vessel with a scheduled departure from Athens/Piraeus, Greece on August 11, 2019, and disembarkation at the same port on August 18, 2019 (hereinafter "Subject Cruise"). The Subject Cruise sailed to various other exotic ports including Delos Island, Mykonos, Paros, Patmos, Santorini, Chania, Neapolis and Elafonisos, Greece.

7. At all material times, Defendant was engaged in the business of providing cruise vacation experiences to the public. The experience of visiting various ports of call are the *sine qua non* of the cruises sold and advertised by Defendant. Defendant advertised, marketed and promoted its cruises, including the Subject Cruise, to prospective passengers and Plaintiff, to entice the public and Plaintiff to purchase its cruise packages.

8. At all material times, the ports-of-call Defendant's Vessel visited were an integral part of Defendant's cruise package for the Subject Cruise.

9. On or about, August 16, 2019, the Vessel was anchored off the coast of Chania, Greece for its scheduled port of call in the town of Chania.

10. On or about the above-mentioned date, and as an integral component of the Subject Cruise sold to Plaintiff, Defendant arranged for its passengers, including Plaintiff, to be transported at various times throughout the day, from the Vessel anchored at sea to the town of Chania, Greece and back to the Vessel

1  via a tender boat.

2  11.    On or about, August 16, 2019, passengers, including Plaintiff, were required to take the tender provided by Defendant if they wished to visit the port of call of Chania.  Defendant provided Plaintiff a "Tender Schedule" which set forth incremental times in which the tender Defendant hired was departing from the Vessel to shore, and the times the tender would depart from shore and return back to the Vessel, throughout the day.  The Tender Schedule was arranged, prepared, printed and disseminated by Defendant to its passengers, including Plaintiff.  Plaintiff did not make her own arrangements to transfer from the Vessel to shore at Chania, nor was she offered the opportunity to make such independent transfer arrangements, as the transfer was part of the Subject Cruise and provided by Defendant.

12.    In or about the morning of August 16, 2019, Plaintiff was transported via a tender hired by Defendant to Chania where she explored the port as part of the Subject Cruise.  At approximately 12:45 p.m., Plaintiff, along with a number of other Vessel passengers, boarded a tender hired by Defendant that transported her back to the Vessel.  The tender crew tied the tender to the Vessel, and Plaintiff was instructed by the crew on the tender to disembark the tender and board the Vessel.  At the time of the tender operation, the winds were strong and sea conditions were rough.  The tender crew assisted Plaintiff off of the tender.  Plaintiff stepped onto the Vessel's platform to board the Vessel.  Contrary to its own prior practice during the Subject Cruise of stationing crew on deck to assist passengers with embarkation during tendering operations, Defendant had no crew members stationed on the Vessel side to assist Plaintiff with the transfer onto the Vessel.  As Plaintiff proceeded with her transfer, unassisted, the Vessel and tender moved apart, and Plaintiff was thrown several feet out onto the Vessel's deck and sustained severe personal injuries.

/ / /

13. There was nothing the Plaintiff could have done to have prevented her incident or to have avoided encountering the dangers of the tender operation under the conditions then present.

14. At all material times, Defendant, as the owner and/or operator of the Vessel, owed Plaintiff a nondelegable duty to exercise reasonable care under the circumstances to avoid causing her personal injuries. This nondelegable duty includes a duty to provide safe ingress and egress from the vessel. *McBride v. Carnival Corporation*, 2019 WL 3503338 (S.D. Fla. August 1, 2019).

15. Defendant had a further duty to warn Plaintiff of any dangers that were known or could have been known to Defendant.

16. On or about August 16, 2019, Defendant, through the negligent acts and omissions of its agents, employees and crew, breached its duty of reasonable care to Plaintiff, and as part of a continuous course of conduct, negligently owned, operated, maintained, controlled, supervised and inspected the *Crystal Esprit*, its gear and equipment, and negligently committing the following acts and/or omissions, including, but not limited to:

   a. Failing to provide passengers, including Plaintiff, reasonably safe means of ingress and egress to and from the Vessel;

   b. Failing to station crew and provide assistance to Plaintiff during the tender operation so that Plaintiff would have a reasonably safe means of ingress and egress to and from the Vessel in violation of industry standards, international safety guidelines, and Defendant's own safety practices and standards;

   c. Failing to provide proper and/or sufficient warnings to passengers so that passengers, including Plaintiff, had a reasonably safe means of ingress and egress to and from the Vessel;

   d. Failing to warn Plaintiff of the dangers associated with tendering operations under the conditions then present;

e. Failing to warn Plaintiff that there would not be proper and sufficient assistance for passengers attempting to embark/disembark the Vessel;

f. Failing to warn passengers that its crew members were not properly trained and/or supervised so as to provide proper assistance to allow passengers, including Plaintiff, to embark/disembark the vessel in a reasonably safe manner;

g. Failing to provide proper and/or sufficient instructions to passengers so that passengers, including Plaintiff, had a reasonably safe means of ingress and egress to and from the Vessel;

h. Failing to provide a safe embarkation area aboard the Vessel and adequate and/or sufficient handrails in the Vessel's embarkation area so that passengers, including Plaintiff, had a reasonably safe means of ingress and egress to and from the Vessel;

i. Failing to monitor and/or supervise the tender operation, as it occurred, to ensure that it was being conducted in a safe manner;

j. Allowing the tender operation to proceed when the conditions were too rough and unsafe for tender to vessel transfer;

k. Failing to delay the tendering operation until weather and sea conditions have improved;

l. Failing to take proper safety precautions and use reasonable and additional means, including securing mechanisms, to minimize risks associated with tendering operations under the weather and sea conditions then present and in light of the anticipated roll, sway, yaw and/or winds and waves so as to provide passengers, including the Plaintiff with a safe means of ingress and egress to and from the vessel;

m. Allowing the tendering operation to proceed prior to and/or without first inspecting the manner in which the tender was secured to the Vessel to ensure it was properly and adequately secured;

    n. Failing to secure the tender area and the tender adequately and/or safely to the Vessel;

    o. Failing to adequately and/or safely inspect and monitor the tender area;

    p. Failing to properly communicate with the tender boat crew to ensure a safe tender operation and that procedures for the safe embarkation and disembarkation to and from each vessel are followed;

    q. Failing to inspect, investigate, screen, select, and retain the services of its crew, employees, servants, and agents to ensure the tender operation was being conducted in a safe manner;

    r. Failing to adopt, implement and/or enforce proper and adequate policies, protocols, and procedures to ensure tender operations were being conducted in a safe manner;

    s. Failing to train, supervise, and/or monitor its crew in following proper and adequate policies, protocols, and procedures to ensure tender operations were being conducted in a safe manner;

    t. Failing to adopt, implement and/or enforce proper and adequate policies, protocols, and procedures for the supervision of tender operations as they occur;

    u. Failing to adopt, implement and/or enforce proper and adequate policies, protocols, and procedures requiring employees and/or agents to abide by reasonable safety standards;

    v. Failing to adopt, implement and/or enforce adequate policies and/or procedures to provide sufficient warnings and instructions to allow passengers, including Plaintiff, to have a reasonably safe means of ingress and egress to and from the vessel;

    w. Failing to have an adequate, properly trained and competent crew complement aboard the Vessel;

///

  x. Failing to investigate and ascertain the cause of prior similar incidents in its fleet of vessels so as to take measures to prevent their reoccurrence and/or eliminate or avoid the hazards, and more particularly Plaintiff's incident and subsequent injury; and

  y. In other manners expected to be discovered during the course of ongoing investigation and discovery.

17. The above acts and/or omissions by Defendant and/or its agents, employees and/or crew, proximately caused Plaintiff to sustain serious personal injuries, as the incident would not have occurred but for the above acts and/or omissions.

18. To the extent notice of any danger is required to be alleged, which Plaintiff denies, Plaintiff alleges Defendant knew of and/or created the foregoing dangerous and unsafe conditions that caused Plaintiff's injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care, knew of them or should have learned of them and corrected them and/or warned Plaintiff of them.  Insofar as it relates to conditions that Defendant did not create, if any, Defendant's knowledge was or should have been acquired through maintenance and inspection of the Vessel, and/or through prior incidents involving passengers injured during tender operations aboard its fleet of vessels, and/or from its monitoring and supervision of its employees and crew.

19. At all times material, Defendant had exclusive control of the Vessel.

20. As a direct and proximate result of the incident and the negligent acts and omissions alleged herein, Plaintiff was hurt and injured her health, strength and activity, suffered a tibia fracture and severe injury to her knee requiring a total knee replacement surgery, injury to her ankle and shoulder, and/or aggravation of a previously existing condition, and suffered other severe injury to her body and shock and injury to her nervous system and person, all of which injuries have

caused and continue to cause physical and emotional pain and suffering to the Plaintiff, mental anguish, permanent scarring, loss of enjoyment of life and inconvenience in the normal pursuits and pleasures of life.  Plaintiff is informed and believes, and thereupon alleges that some or all of her injuries will result in permanent damages, disability and pain and suffering.  Plaintiff alleges pain and suffering and general damages to Plaintiff in an amount to be proven at the time of trial.

21.   As a further direct and proximate result of the incident and the negligent acts and omissions alleged herein, it was necessary for Plaintiff to receive medical care and treatment, and Plaintiff did sustain an expense for such medical treatment, care, medicines, and for other and further medical care.  Plaintiff alleges the cost of the medical care and treatment, past and future, and other special damages according to proof at trial.

## PRAYER

WHEREFORE, Plaintiff GAIL PARSONS prays for damages against Defendant as follows:

1. For general damages, according to proof;
2. For medical expenses according to proof;
3. For other special damages according to proof;
4. For prejudgment interest;
5. For costs of suit; and
6. For other such relief as the Court may deem proper.

Dated: August 14, 2020    LAW OFFICES OF AKSANA M. COONE

By: /s/ Aksana M. Coone
    Aksana M. Coone, Esq.
    Attorneys for Plaintiff,
    GAIL PARSONS

## **DEMAND FOR JURY TRIAL**

Plaintiff, GAIL PARSONS, hereby demands trial by jury of the above-captioned matter.

Dated: August 14, 2020

LAW OFFICES OF AKSANA M. COONE

By: */s/* Aksana M. Coone
Aksana M. Coone, Esq.
Attorneys for Plaintiff,
GAIL PARSONS